### WILLIAM H. FLINT & wife *vs.* GLOUCESTER GAS LIGHT COMPANY.

If the employment of a person by a gas light company to let on gas into houses has ceased, merely permitting him to continue to let on the gas, at the request of consumers, will not render the company responsible for an injury arising from an explosion of gas which had escaped into a room by reason of his carelessness in omitting to close the end of a gas pipe therein before letting on the gas, provided the person injured had notice that his employment by the company for that purpose had ceased.

TORT against a gas light company, to recover damages for an injury to the female plaintiff from an explosion of gas.

At the trial in the superior court, before *Lord,* J., after the decision reported in 3 Allen, 343, William H. Flint, one of the plaintiffs, testified among other things that he built his house in 1859; that he moved into it in October 1859; that he employed John B. Thomas to put on some gas burners; that Thomas did so; that his wife in the evening opened the door into a bedroom, whereupon an explosion followed, which caused the injury complained of; that he supposed that he had no right to let gas on; and that Thomas had always let on gas, and had done it once at his store eight years before. On cross-examination this plaintiff testified that before 1858 Thomas had acted as the defendants' superintendent; and that one Cochrane did the same afterwards, so far as to collect the bills; that he knew Cochrane as connected with the corporation, and Cochrane was the only person who applied to him, or to whom he applied, in relation to the corporation; that he applied to Cochrane to put down the service pipe to his house, and to put in the meter, supposing him to act for the corporation, and that Cochrane did so; that he knew that the company had nothing to do with the pipes inside of the meter, and applied to Thomas to put them in, and paid him; and that he knew that Thomas had resigned, so far as collecting the bills was concerned.

The plaintiffs also introduced the deposition of Thomas, who testified at great length, but the points now material were, that he was the superintendent and treasurer of the defendants from

1853 to 1858; that his duty was the general supervision of the works, of manufacturing the gas, laying the pipes, setting the meters, delivering the gas to consumers, and doing everything connected with the works that there was to be done; that he resigned his office of superintendent and treasurer in December· 1858, and never afterwards received from the company any authority to act for them; that he continued to let on the gas in buildings as before until after the explosion at the plaintiffs' house; that he was never ordered not to do so; that upon doing so he always reported the fact to Mr. Cochrane, the new superintendent; that he thought he had thus let the gas into from twenty to forty buildings between his resignation and the time of the explosion; that after the explosion he told Mr. Cochrane that he would no longer turn on the gas for them; that he let the gas on at the plaintiffs' house, and omitted to go into the room in which the explosion took place, the partition having been put up after the pipes were put in, and he not knowing or recollecting that there was a room there; that he did not examine the dial of the meter to see whether gas was escaping; and that putting in the pipes and fitting the house for the reception of the gas is always done by the consumer.

The plaintiffs also introduced in evidence certain of the rules and regulations of the defendants, respecting the putting in of the pipes and meters and the introduction of gas, one of which provided that "the company will introduce the gas into any premises within the range of the pipes whenever their inspector shall be satisfied that the fittings are put up in their proper places, in a workmanlike manner, and are perfectly gas tight."

Upon the whole evidence, the judge ruled that the jury would not be warranted in finding that the defendants were responsible to the plaintiffs for the acts of Thomas, and a verdict was taken for the defendants, and the case reported for the determination of this court.

*J. C. Perkins,* for the plaintiffs. After Thomas ceased to be the superintendent of the company, he continued to turn gas into houses as before. In this respect there was no change whatever

in his acts for the company. This was a part of the company's business, which he formerly had authority to do for them, and which he continued to do for them. He might well do this business for the company after ceasing to be their superintendent. There was no public notice of any change in his employment in this respect; and the plaintiffs had no notice of any such change. Until such notice the plaintiffs had a right to consider him in this respect as the agent of the company. Story on Agency, § 470. The fact that the company allowed him to keep right on had a tendency to mislead; and the company were bound to prevent such deceptive appearances. *Williams* v. *Keats,* 2 Stark. R. 290. *Stubbs* v. *Eley,* 1 C. & P. 613. *Dolman* v. *Orchard,* 2 C. & P. 104. A course of dealing was established between the company and Thomas, after his resignation. In each case he reported to the superintendent. The company ratified and adopted his acts. *Forsyth* v. *Day,* 46 Maine, 192. 2 Greenl. Ev. § 66. *Culver* v. *Ashley,* 19 Pick. 301. A general agency is often created by frequent recognition. The plaintiffs were guilty of no negligence which should prevent their recovery. *Dowell* v. *General Steam Navig. Co.* 5 El. & Bl. 195. *Davies* v. *Mann,* 10 M. & W. 546. *Bridge* v. *Grand Junction Railway,* 3 M. & W. 244. *Isbell* v. *New York & New Haven Railroad,* 27 Conn. 393, 403, 404. *Browne* v. *Providence, &c. Railroad,* 5 Gray, 35.

*J. G. Abbott,* (*B. H. Smith* with him,) for the defendants.

DEWEY, J. The question here raised is, whether from the evidence introduced in the case the jury would have been warranted in finding a verdict for the plaintiffs. That depends upon the answer to the question whether there was any evidence from which the jury would have been warranted in finding that the defendants were responsible for the acts of John B. Thomas.

1. Thomas was not in fact in the employment of the defendants. They had no contract with him for service, paid him no wages, and he owed them no duties. He had at a former period been their superintendent and treasurer; but he had, a year previous to the time of the alleged injury to the plaintiffs, resigned those offices, and Cochrane had been appointed thereto, and was in

the discharge of the duties connected therewith. The plaintiff William H. Flint admits that he saw this new agent conducting the operations of the company, and applied to him as such agent to connect the main pipe in the street with his house, and after this had been done applied to him to put the meter into his house, which was also done.

This knowledge of this plaintiff that a change in the agency had taken place and that the new superintendent had been employed disposes of all questions as to the duty of the defendants to give notice of the change in the office of superintendent to their customers. The plaintiffs therefore fail to charge the defendants for the acts of Thomas, either by reason of his being in fact their superintendent, or by any omission on their part to give notice that he had ceased to hold that office.

2. The next inquiry is, whether the defendants should not be charged with the default of Thomas, although he was not in fact their agent, by reason of their permitting him to continue to turn on the gas for the new customers whenever the customers requested it. It seems that the turning on or delivery of the gas to a customer was properly the business of the company. Thomas had while superintendent acted in the capacity of a gas-fitter within the building, which was exclusively a matter in which he was employed by the customer, and he also as superintendent let on the gas ; and after he ceased to be superintendent he was very frequently employed by the customers as gas-fitter, and having prepared the gas pipes had in such cases, when requested by the customers, let on the gas. This, it is said, was done with the knowledge and acquiescence of the company. But these facts only show that the defendants were willing that Thomas should let on gas, if their customers chose to have him do so for their own convenience.

The case differs from those cited in behalf of the plaintiffs. Some of those cases present the feature of a clear understanding that the party is dealing with a certain known principal, and exclude all ground for the supposition that he intended to deal solely with a third party. Others are cases where the party

is estopped to deny the agency by adopting the acts as obliga-tory, and assuming the liabilities arising therefrom.

We see no grounds for any estoppel by reason of any decep-tion practised by the defendants, so that the plaintiffs were misled by the conduct of the defendants in permitting Thomas, at the request of the customers, to let on the gas without object-ing thereto. It might have been a very good answer for the plaintiffs, had they been sued by the defendants for letting on gas without previous application to, or the assent of, the super-intendent, that the defendants had by their course of business given them reason to suppose that they made no objection to Thomas's letting on the gas when requested by the consumers.

To this extent the defendants were bound by their acts in reference to this subject, but this is the extent of the estoppel. While this evidence might authorize the jury to find that Thomas had a license to turn on gas at the request of the con-sumers, it does not authorize them to find that the relation of master and servant existed between the defendants and Thomas, or that they assumed any responsibility to the consumers for the manner in which Thomas performed that service.

This point seems to have been fully met and decided in the former hearing of this case, reported in 3 Allen, 343. The appli-cation of the rules of law there stated in reference thereto forbid the maintenance of the present action, and sustain the ruling that the jury would not be warranted upon the evidence to find that the defendants were responsible to the plaintiffs for the acts of Thomas. *Judgment on the verdict for the defendants.*